Mr. Chief Judge, and may it please the Court, Matt Learberg for the appellant, Mr. Gregory Christian. When a defendant is presented with a plea bargain, his counsel has a critical responsibility. He has to accurately describe the consequences of taking the plea and the consequences of rejecting the plea, so that the defendant can make an informed, voluntary choice under the Sixth Amendment. Here, Christian's counsel failed to provide that basic level of competent advice. And as a result, this Court should reverse the district court and issue to Christian the writ of habeas corpus. So Christian's counsel here failed him at the only stage when legal aid and advice would help him, under the language of Missouri v. Frye. There's two things that counsel failed to do. First was the simple asking of a follow-up question. Counsel asked him, asked Christian, do you have any prior felonies? And Christian said, I have two. And counsel knew at the time, he admits, that he knew at the time that those two had to be on separate days. I want to make sure I know where we're going. Are you arguing that he was not advised of the maximum possible punishment and that consequently the events that occurred, his change of mind, are irrelevant? Your Honor, the maximum punishment isn't the issue from Christian's view. The issue is the minimum punishment. What Christian believed, during his discussions with counsel, and this is set forth on Joint Appendix 515 through 520, and this is in the habeas collateral proceeding in West Virginia. His counsel admitted that he knew the law but didn't ask that follow-up question and didn't walk down the hall to check whether these prior convictions were on the same date. And what Christian believed, based on that representation, his counsel said if you have two priors, you will get a mandatory life sentence. And so in Christian's mind, at that moment, he was presented with rejecting the plea, in which case if he were convicted of any of the offenses. At what point? When he was first, when the plea agreement was entered into or later on when the day of trial came and he wanted to plead to just one? Your Honor, I understand now. The plea discussions evolved over the course of a couple days, and there were two things. There were two opportunities for counsel to give him the right advice and two missed opportunities. First was about four days before trial, or possibly before, there was a discussion. This is when counsel represented to Mr. Christian that with these two priors, you face a mandatory minimum life sentence. Mr. Christian said, okay, go ahead and pursue plea negotiations. We have evidence in the record. There's a letter from counsel to the prosecution that says, we'll take a plea, but in all capital letters, there will be no recidivist filed. That's in caps because that's the heart of what Christian was worried about. Then on the morning of trial, there's another opportunity. Mr. Christian has had a change of heart. He says, no, I'm not going to take this blanket global plea deal. I'm going to plead to just one. I'm going to plead to the malicious assault, and I'm going to go to trial on those robbery counts because I didn't do it. His counsel says, again, this is for a second time, look, even if you plead to just one, that one is enough under the recidivism law to subject you to a life sentence. So his plan that Mr. Christian came up with to plead to one and try two, his counsel says, that's not a good plan at all. He says, I would have advised you. He says, I would have told you that pleading to that one count, if you have two usable felonies, which you told me, then of course that's not in your best interest for them to give you life without eligibility if they can prove those prayers. That's Joint Appendix 518. His counsel presented him with the choice, as Christian heard it, the choice between a mandatory life sentence or taking the plea deal, or I guess the third option would be going to trial on all three counts. But Mr. Christian never got the truth, and his counsel could have found out the truth very easily. Two ways. Fifteen seconds by asking a follow-up question. Okay, you said you had two priors. Are these coming out of the same incident? It's a simple question for counsel to ask. Mr. Christian would have said, yeah, yeah, it was from the same thing. Yeah, it's two felonies, but I was convicted on the same day. That 15 seconds colloquy never happened. It didn't happen during the initial plea discussions with counsel, and it didn't happen that morning of trial. Wouldn't he have gotten recidivist punishment on whether he had one felony or two felonies? Yes, Your Honor, there's two different. Even if he was told this will be your second felony, you're looking at a recidivist punishment if the state elects to pursue it. Well, Your Honor, there's a key difference between those two paths. One is five years. That's right. Or even three years, depending on West Virginia laws, that recidivism enhancement can be five years on the determinate sentence or three years on the indeterminate sentence. Right. Or if you follow path two, if you have two prior felonies, that's mandatory life imprisonment. Right, 15-year parole. With the 15-year parole eligibility. Of course, parole is an open question. I wanted to be sure to inform the Court and include all of that in the brief. My point is only that recidivism was on the table as a possibility, whether it would be treated as a second felony offense or a third felony offense. It's absolutely true that he faced a recidivism. The potential of recidivism, if he pleaded guilty without an agreement with the government or if he went to trial and were convicted on any account, he faced the possibility of a recidivism enhancement. But the key difference is three to five, three or five years, is different than life imprisonment. And the record shows on its whole that that potential of life imprisonment sentence, as a minimum, was what scared Mr. Christian into taking the deal. That's what caused him to take the deal based on counsel's errant advice. The other thing is not only the path of the 15-second follow-up question, but counsel could have, just like in Rumpilla, walked down the hall and pulled the file. He happened to be in the same courthouse where this conviction was, just like in Rumpilla. He could have walked down and pulled the file, which is what the Supreme Court required in Rumpilla. In fact, in Rumpilla, what the court required was for counsel to go, review the file, read a transcript from a prior trial, focus on testimony of one particular witness, and be ready for a hearing on sentencing in that case. We're not asking that much at all. Under Rumpilla, surely what Mr. Christian's counsel should have done is at least walked down the hall and looked at the dates. He didn't need to read the whole conviction file. He just needed to look at the dates, see that they were the same, and use his knowledge of the law, which he admits he knew, to correctly advise Mr. Christian on what was at the core of Mr. Christian's decision that morning to go to trial. In West Virginia, is the prosecutor's consent required to plead to one of several charges? Your Honor, I don't know. I don't know the answer to that. In most states, if the Senate can't pick and choose what he wants to plead guilty to, the prosecutor has to consent to it. You don't know what the rule is in West Virginia? I don't know. Is there any evidence on the record that the prosecution had consented in this case to accepting a plea just to the malicious woman? Your Honor, the closest we come to that is there's testimony from Mr. Christian during the habeas proceeding where his standby counsel is asking him questions. And Mr. Christian explains the prosecution's involvement in the plea on the morning of trial that his counsel had presented. Mr. Christian told counsel, I just want to plea to one. His counsel then took that deal, that proposal, to the government, and the government came back and said, don't do that. We're going to give you life imprisonment. And that's the closest we get to what Your Honor is asking about. Other than that, I don't believe that the record shows one way or the other. And who would get life imprisonment based on armed robbery charges? As a potential maximum. Right. But not as a minimum. The minimum was much lighter. In the habeas jurisprudence, there is a distinction that's drawn between strategic choices and just inattention. In many of the recent Supreme Court cases, these are strategy cases. These are cases where the Supreme Court is saying time and again, don't second-guess strategic choices sitting as a federal habeas court that counsel makes, which is I'm going to introduce this evidence but not this. I'm going to investigate this but I'm not going to probe too far into childhood records or introduce those sentencing. But that's not this case. This case turns on this distinction between strategic choices where deference is required and just inattention and failure to do the basic job of counsel. That's this case. This is just like the quote from Wiggins v. Smith, that counsel's failure is the result of inattention, not reasoned strategic judgment. And Rompilla, the facts in the holding in Rompilla is that when counsel knows that a particular content of that prior conviction file is going to be at the heart of the upcoming sentencing, then counsel has to go at least educate himself about what's in that file. And as I said before, the requirement here is just comparing the dates. It's very minimal. In that sense, this is very similar to two of the cases from the Fourth Circuit looking at these kinds of reviewing prior convictions files. The first is United States v. Russell. This is from 2000. And in that case, the defendant had three prior convictions. Counsel never looked into those convictions to see that two, in fact, had been overturned. And this court held the necessary investigation was minimal. A simple check of the D.C. Superior Court records would have verified that Russell's convictions had been vacated. That's exactly this case. A simple check of the file or a simple follow-up question could have verified that, in fact, Mr. Christian didn't face this mandatory minimum life sentence. And then just recently in the United States v. Lewis case, this is a case where, in fact, it's very, very similar. Counsel thought Lewis was a career offender and subject to a mandatory life sentence. Because of that bad advice, the defendant took a plea deal for 34 years. Let me ask you also for help finding something in the record. If you exclude the defendant's testimony and look at the J.A., the testimony in state court, exclusive of the defendant's testimony, where's the best evidence in the record that he was misadvised by his attorney? Yes, Your Honor. And if you could just give me the page number. Sure. It's between 515 and 520. This is the colloquy during the habeas hearing between Mr. Christian appearing pro se and his counsel at the time. And there's a couple good quotes that I think do crystallize this. Now, of course, when you have a prisoner appearing pro se, this doesn't read as great as a transcript might from an accomplished attorney. But it's all in here. The elements are in here as to what happened. On page 516, Christian says, Did you advise me that? And this is about halfway down line 18. Did you advise me that? Greg, hey, if you do that, you're no longer going with this plea now. If you do that, the state will pursue recidivist proceedings against you if you do that because you've got two prior felonies. Do you recall that? And counsel says, yeah. So he does recall that. And further on 518, that's where we've got a couple of other good admissions from counsel. 518, line 7. This is counsel speaking. He says, I would have in every other case. That's not the right quote. It says, if you have two usable felonies, which you told me, then, of course, it's not in your best interest for them to give you life without eligibility if they can prove those prior. Right, and the government's position on these kinds of quotes. Your position is that's misadvice. Yes, these are misadvice. Counsel is telling him. Counsel doesn't have the luxury of saying, of hiding behind the word usable or hiding behind the idea that it's Christian's job to understand the law of recidivism. It's counsel's job to tell him. When counsel says, how many felonies do you have? And he says, I have two. Counsel needs to ask that follow-up question. So whether it's construed as a commission or omission, whether it's that counsel should have told him the natural follow-up question to disabuse him of the notion that it's a mandatory life sentence, or whether these quotes from counsel fit perfectly in the box of misadvice, shouldn't matter under the Sixth Amendment. Also on page 518. I'm sorry. You were finishing your delineation of examples, so go ahead. Another is counsel says, I would have in every other case told my client if they had two priors that could be used, then the state could do a recidivist, and under West Virginia, two usable priors would result in life without eligibility. So in the context, Christian says, I have two. And counsel says, if you have two and the government shows you have two, you face a mandatory life sentence. That is misadvice. That's misadvice. Counsel can't hide behind the if. When the premise for this conversation at all is the fact that counsel had asked him how many priors he had, and Christian said two, two prior felonies. Well, even if we assume, for purposes of our discussion here, there was sufficient performance, there would still have to be a prejudice requirement, which in the guilty plea context would be, but for counsel's errors, the defendant would not have pled guilty and insisted on going to trial. But here Mr. Christian's testimony seems to significantly undercut that standard. He testified at one point, I didn't care if I got 300 years, I was going to trial. And then he's asked questions about, you know, what were the factors that influenced your decision to plead guilty? And he had a whole litany of them. He was assaulted in jail. He was put in solitary confinement. They confiscated his property. Too much secondhand smoke. It was too hot. It was over 100 degrees. I had to sleep on the floor. And then he was asked, did those conditions influence your decision to plead guilty? Absolutely. Those conditions alone could have propelled an individual to plead guilty just to get away from those conditions. So on the basis of his testimony, it would seem that there would be a rational basis upon which the state court could have concluded there was no prejudice. Your Honor, a couple of responses to that. First is, under the habeas jurisprudence, the no second fight at the apple jurisprudence, which is very similar in West Virginia as it is in federal court. It's the Losh case in West Virginia. But it's the same idea that you can't have a successive habeas petition. Mr. Christian has to throw every possible ground for relief in his habeas petition in state court, just as folks do under 2255 or 2254 in federal court. So he included all of his grounds and attempted to introduce evidence to prove each and every one of his possible grounds for relief. And I think read in context, the quote that Your Honor just read, is Mr. Christian attempting to lay the groundwork for each one of those claims. But the standard is actually fairly light on prejudice. The standard in full from Hill is that the defendant must show there's a reasonable probability, not preponderance of the evidence, not clear and convincing evidence, just a reasonable probability that but for counsel's errors, he would have pleaded guilty and insisted on going to trial. And when you look at the facts as a whole, they show that this recidivism question was the linchpin of his decision to plead. Why? First on Joint Appendix 596. I want to be clear in your response. Are you saying that it would have been absolutely irrational, there could be no fair-minded basis for a divergence of opinion among jurists, that the answer to this question where he says, absolutely, they would have influenced you to plead guilty, that it would have been irrational for all judges to have concluded that that was a factor in his decision to plead? Your Honor, they can be factors without being the but-for cause. And I would say yes. To directly answer your question, yes. It is not reasonable for a jurist to look at the whole totality of the circumstances and facts here and to say that Mr. Christian changed his mind the morning of trial to plead from 1 to 3 because of anything other than the only thing that changed that morning. The only thing that changed that morning, he was in the same jail cell, all of those other factors that your Honor just listed, they were all the same. The only thing that changed that morning of trial is that his counsel told him again, don't do this or you'll get a mandatory life sentence. And as a result, that one thing that changed is the thing under this record looked as a whole that caused Mr. Christian to plead and take that plea that morning. Now I'll reserve the rest of my time. Let me ask you this question. I can't find it right now in the record. My recollection is that Mr. Henderson testified that the only choice was plead to all three or go to trial. Am I right in that recollection? Your Honor, I believe there is something in the record to that effect and I can look for it during counsel's argument. So will I. Let's hear from Mr. Lim. Thank you, Mr. Learberg. Mr. Lim, maybe you can save us both a moment. If you recall, am I correct in recalling that testimony that Mr. Henderson said the only choices were plead to all three or go to trial? Your Honor, I don't recall that testimony. Okay, go ahead with your argument. Good morning and may it please the Court. Albert Lim on behalf of the State of West Virginia. Appellant's claim of ineffective assistance of counsel fails for three independent reasons. The first is one that my friend did not spend any time talking about, and that is exhaustion. The second and the third reasons are that the claim fails under both prongs, strickland under the doubly deferential AEDPA standard. To start with exhaustion, the primary problem with Christian's claim, as far as exhaustion is concerned, is this Court's controlling decision in Mallory v. Smith. That's a 1994 decision authored by Judge Wilkinson. And there are two important points in that decision. The first is, and it specifically says, a state prisoner seeking federal habeas must have presented his claims to the state court, quote, in accordance with state procedure. And there is no dispute that under state procedure and longstanding West Virginia case law that the West Virginia Supreme Court of Appeals requires that a habeas claim be brought first to the circuit court. And that's State Exerell Wyne v. Gordon Kirshner, and that's a very longstanding opinion. And so the question is whether it was fairly presented to the circuit court, and that brings us to the second important point in Mallory v. Smith. And it says, quote, a habeas petitioner cannot simply apprise the state court of the facts underlying a claimed constitutional violation. The petitioner must also explain how these alleged events established a violation of the constitutional rights. In other words, you cannot simply point to snippets of factual record. There must be an explanation of the alleged violation according under the law. And the Mallory court goes on to say that the problem there was that the petitioner in Mallory v. Smith had three grounds with multiple sub-arguments in a seven-page pro se habeas petition. And the Fourth Circuit there found that what he was pointing to in support of exhaustion, quote, little more than snippets scattered on pages four and five of a seven-page filing. Was exhaustion presented to our district court? Was exhaustion presented to the district court? It was not. Why not? Why are we just not hearing this now? Well, under the statute, the requirement is that the state have expressly waived exhaustion in order for us to prevent the state from bringing it even at the appellate stage. And it's not unusual for the state on further review of a case to raise exhaustion at the appellate level. We cite two cases in our brief. The first is Gonzalez v. McCune. It's a Tenth Circuit en banc decision where the state brought exhaustion for the first time en banc. You can find two cases in the history of the United States where it was brought at the first time at the appellate court. There are other cases. Those are the two that we've cited in our brief. Gonzalez v. McCune is a Tenth Circuit en banc decision. And the other one is Caravel, which is a Second Circuit decision where it was brought for the first time on appeal. And the reason for that is that 2254B3 says that exhaustion is not waived unless the state has expressly waived it. And the recognition is that attorneys aren't perfect, and the state is not perfect, and we freely admit that. But on further review of this case on the appellate level, in trying to discover what the factual and legal basis were in the state court opinion, we reached the conclusion that the claim was not exhausted. And the argument here, and again, Mallory v. Smith is instructive because it says that the two factual references that Mr. Mallory were referring to were, quote, easily lost in the sheer numerosity of petitioner's claims. What we're looking at here, this is the point of comparison. In Mallory, there were three claims over seven pages. And this court found that the factual snippets that they were pointing to were insufficient. Here we are talking about dozens of arguments over hundreds of pages. And petitioner's counsel has pointed to three or four factual snippets. In the original petition in the state supreme court, there were three claims, including seven sub-arguments on ineffective assistance of counsel specifically, over 51 pages. He then submitted an amended petition with 10 claims, including six sub-arguments on ineffective assistance of counsel, over 28 pages. In the brief in support of the amended petition, which petitioner's counsel has included some pages of in the supplemental joint appendix, and on which he relies, there were eight claims, including 11 sub-arguments on ineffective assistance of counsel. Again, none of those included this specific one, over 82 pages. And then, of course, there is the omnibus hearing on which petitioner relies, and that is a transcript that spans over 400 pages. So by comparison, this case compared to Mallory v. Smith, we think there is a clear exhaustion problem. We do not think we waive the argument. There is no case in the country, and petitioner has cited none, that holds that a state has waived exhaustion under 2254b3, where there is an express reservation, which is what we have here in the answer. At the omnibus hearing, the circuit court in West Virginia invited whatever claims he wanted to make, and there is a discussion on page 585 of the appendix, where a counsel is saying, in reference to Mr. Christian, that Mr. Christian said he was unaware at the time of the plea that two prior felonies did not make you eligible for a recidivist. It is stated he discussed there was a lifetime recidivist with Mr. Christian, in reference to Mr. Henderson, his initial trial counsel. So it would seem like the circuit court in the omnibus hearing was alerted to the issue. Right. So first of all, we would say that we do not think if you go through the record that you will find the necessary argument that is required under Mallory. The specific provision, the specific statement in the circuit court decision that Petitioner has pointed to says, Petitioner contends that his counsel advised that if Petitioner pled guilty only to the charge of malicious assault on a police officer, then there would be no plea agreement with the prosecutor, and that the prosecutor would then seek a recidivist information against the Petitioner. That's all that it says. It does not recognize or acknowledge an argument that the advice was incorrect. It does not recognize or acknowledge an argument that it was ineffective assistance of counsel. It simply says that the prosecutor would then seek a recidivist information against the Petitioner. In the state's view, that does not suggest that the circuit court considered and adjudicated this argument. But even if this court were to deem the claim... The opinion did say that it had, correct me if I'm wrong, that it had heard all the arguments that it did not specifically address them in its order, that it had nonetheless considered them on the merits of denial. It does say that. We don't think it is, and again, we would go back to Mallory v. Smith, and we would suggest that the circumstances there where the circuit court, this court, found that there was no exhaustion pale in comparison to the one here. Where again, there were three grounds for habeas over seven pages in a pro se petition. It said that, counsel, but the record clearly indicates that this specific issue was raised at the hearing, and the court ruled on the merits of it. No matter how much you talk about comparisons in terms of numbers, it did. Your Honor, with respect, we would disagree. We believe that... You can't disagree with the record. Judge Agee just painstakingly went over it with you. You can't disagree with the record. The court ruled and said on the merits and discussed that, the very issue we're here today on. You know, you might not like it, but it did. As a matter of fact, you tried to argue that the state court was wrong and allowed him to even raise it. No, Your Honor, that's not our position. Again, our position would be that going through the record and including the circuit court's opinion, we do not believe there is anything in there that suggests that the claim was either exhausted or ruled upon. But on the merits here, even assuming that this court deems the claim exhausted and adjudicated, we think that the claim fails under both prongs of Strickland when the doubly deferential standard under EBPA is applied. And on the merits, first the question of whether there was incorrect advice. Our first argument is if you look at the record, and Judge Traxler, you had gone through, asked Petitioner's Counsel about where is the testimony in the omnibus record. He's pointed to the same pages that we would. And our position is that on page 517, it says, Mr. Henderson, the Petitioner's Counsel, says, I don't recall what advice I gave you. In any case, with any client, I would have said the following, which is what he said is entirely accurate under the law. If you have two usable priors under West Virginia law, the state could seek life, mandatory life, under the recidivist statute. But there is no evidence in the record, there is no testimony by Mr. Henderson that says, I remember or I said to you specifically, Mr. Christian, you will get life from the state under the recidivist statute. And so we would first start by saying, under the doubly deferential standard, and again, as Judge Agee had pointed out, the question here is not whether this court thinks the state court was incorrect. The question here is whether it is completely irrational. And it is. How in the world can you represent someone? The key to a plea bargain is the lawyer should understand what exactly is the bargaining position of his client. He basically told his client, listen, you don't have much. You have two felonies, and it's a mandatory minimum life. That's what he was saying. And so if you're under that false and incorrect notion, how could you possibly effectively represent anybody in terms of a plea agreement when you believe that that's your bottom line? You'd do anything. You don't have any bargaining chip. Even when you try to say, well, how about just an assault? Nope, it matters. Even that conviction would give you life. Yes, Judge Gregory, and under those facts, the facts that you have posited, that would be a different case that would be potentially very problematic. We do not think that there's evidence in the record. There is no statement. There is no evidence that Mr. Henderson said to the petitioner, this is what you will get. He says, I don't recall what I told you. He would have told you that you would face a mandatory minimum of life. He says, I would have told you, as I would have told any other client, that if you had two usable priors, under the law, you could get mandatory minimum life. But there is no evidence in the record of what he specifically said, other than what Mr. Christian claims. But Mr. Henderson, there is no testimony from him admitting, which is what Petitioner's Counsel contends, there is no testimony from him admitting that that is what he said. But it doesn't matter. That would be a non-starter if you looked at his records. That wouldn't have been on the table because they were both the same day. So they wouldn't have been two usable. Yes, Your Honor. Right? I'm sorry. Am I wrong about that? If counsel had done just the minimum and done that? Yes, Your Honor. If counsel had looked at the records and found that the two were different, and this is what Judge Chambers held in the district court, we do not dispute that he would not have gotten life under the recidivist statute. But, again, our first point is, based on the evidence in the record, it would be reasonable for the state court to conclude that the advice was completely correct. But even if the advice was incorrect, we have a second argument, which is that it would have been reasonable for the state court to conclude that a further investigation was not necessary, which is what Judge Chambers concluded. Was not necessary? Yes, Your Honor. You mean it wasn't necessary to look up what his actual conviction was? Did the judge rule that? Yes, that is what Judge Chambers said. That's unreasonable. That's clearly unreasonable. Only someone who has never defended anybody is a criminal. I can't understand. How would you come to that conclusion? There is no case in the country, there is no Supreme Court case, and there is no federal appellate court case in the country that holds that in this particular circumstance. Now, Petitioner's Counsel cites Rompea, Wiggins, and Williams, which are all death penalty mitigation cases. There is no case in the country that says, under this circumstance, on advice at the plea level with regard to recidivists, with regard to a recidivist statute, that defense counsel has an obligation to do further investigation if there is no basis for him to doubt what he has been told by his client. And there are two Fourth Circuit cases. There's one in particular from 1966. It's Horn v. Payton. The citation is 356 F. 2nd, 631. The petitioner got a recidivist sentence there. He said it was ineffective assistance of counsel, for his counsel not to investigate the validity of his prior convictions. This court found it, quote, not unreasonable, stating that, given that there was, quote, no apparent reason for the lawyer to mistrust the petitioner's answers. And this dovetails with the case. But here's the problem. We don't want to engage in an intellectual sort of a hidebook situation. Listen, the question is this. The question is not whether it's a reason to doubt what he said. He said, I have two felonies. Counsel who knows the law will know that that's not the end of the inquiry. It's not that it's something you distrust it. Now I need to find out, when did he receive those? Because I know it only applies to different dates. So that's the reason. It's not that he said something like, if he had said something like this, you know, when I was 18 years old I got a felony, and then when I was 25 years old I got a felony. Then that would be the situation where I needed to doubt that. But he said two felonies. So you would agree that two felonies can be adjudicated and pronounced on the same day? Do you agree with that? Yes, yes, we agree. Do you agree that if they're on the same day they wouldn't apply? Absolutely, Your Honor. But then how can you say that the cases you cite are even owing to this situation? It's not a matter of distrusting what he said. It's a lawyer, and that's the way the Sixth Amendment is very clear about that. He's entitled to effective counsel. And it has to be ineffective if you're talking about just the very thing that gives you life in prison. You don't have much to do as counsel. At least you can sit down and find out what does that mean? What does two felonies mean in a situation like this? And to say that that's not ineffective. Well, Your Honor, the state's position is that there is, the flip side of that is that there is no case in the country that has ever held that this kind of investigation is required. And, again, as Judge Agee pointed out, we are under the doubly deferential review standard where the question is whether it was reasonable for the state court to find that there was no violation, whether it was reasonable that the state court find that Mr. Henderson's conduct as trial counsel was itself reasonable. But even if his court were to disagree on the merits, we still have to get into the question of prejudice. And, again, we are under the doubly deferential standard. Yes, Your Honor. Well, before you run out of time. Of course. Let me ask you the same question I asked your opponent. Can a defendant plead guilty to one of several charges without the consent of the state? I'm not certain of the answer to that question. We don't prosecute at the trial level. But I don't think it, I'm not sure that that's relevant here. You don't know the answer? I do not know the answer to that question. We could submit a very short supplemental filing on that if it would be useful to the court. I'm just wondering, was this even a, one of the things that seems to be missing for me in this record is any development of this issue as to whether or not he was going to be able to plead guilty to one offense. If I were the prosecutor, I would not want a plea to just one charge. If I'm going to try the case, I would want to try all of it. So I'm not, I'm wondering if there was even an option to him to plead guilty other than straight up. Because I'm looking at the testimony of his lawyer, he says, and I found what I was looking for, Mr. Lieber, says your option, I'm on page 515, says the defendant in asking the question says, what provoked that or what provoked me to go back there, go back to pleading guilty to all counts on line 15? I can't, the lawyer says, I can't say what provoked it. I mean, your options were not pleading to anything or I will accept the plea off. So I just never saw where there was ever any option for him to pick one and go to trial on others or not plead. And so that's why I asked you the question. Right. I don't know that he had all the options he argues he's got. That may well be true. I'm not sure that the discussion ever reached that point with the prosecution. But to quickly finish on the question of prejudice, I think Judge Agee has put his finger on it, which is, again, the question is whether it would have been reasonable for the state court to conclude that there was no prejudice here. And even if this court, even if this panel disagrees and would de novo conclude that there was prejudice, we think that there's enough in the record to cast doubt on that and that a reasonable fact finder, that a fair-minded jurist would find that the state court was not wrong. And that's because there were a number of other factors. There is the testimony that Judge Agee refers to about the conditions in the Cavalcanti jail. That was on direct examination. That was standby counsel for Mr. Christian at the omnibus hearing where he says, absolutely. Absolutely that influenced me. And I believe that could influence an individual alone. Furthermore, as Judge Chambers points out in the district court opinion below, the state court credited Mr. Henderson's testimony that Mr. Christian admitted to him that he committed the robberies. So there's the possibility of facing trial when you know that you've done it. And then, of course, the conditions of the Cavalcanti jail. And with that, the state would ask that this court affirm the district court. Thank you. Thank you, Mr. Lynn. Mr. Learberg? Your Honor, I have a few answers for you. Joint Appendix 265. This is the beginning of the trial or plea hearing before the court. And the judge, I think this answers your question of is a partial plea possible. The judge says, good morning, Mr. Christian. I'm Judge O'Hanlon. It's my understanding that you and your attorney have reached a partial plea agreement with the state of West Virginia. Is that correct? So that suggests that a partial plea agreement was possible if the judge thought it was possible. It doesn't exactly answer the question of whether the government's consent was needed, but it does show that at least at one point that was what the judge had been informed. That also helps to show that, in fact, this was a last minute change. This goes directly to the prejudice question. What changed that morning in those last couple days before trial? What changed? He's in the same jail, same bad jail conditions. All of those things are the same. The only thing that changes is this advice that, no, you're going to face a mandatory life sentence. He gets that advice. The record shows that that is what happened at that moment that causes Mr. Christian to take the plea. Counsel raises a case from the 1960s to say that there's no case that says you have an obligation as counsel to doubt what your defendant is telling you. Actually, Rompilla's a case, to use a more recent case at a higher court. Rompilla is a case where the court says, even though the defendant says, don't worry, my childhood's not worth looking into, the Supreme Court held that counsel still had an obligation to go look into the circumstances of the prior convictions even though counsel said, don't bother, or even though the defendant said, don't bother. Finally, counsel says that hides behind this I don't know and this if and I don't recall the exact language, kind of language from 515 to 520, from what Christian's counsel was saying at the time. If in a habeas proceeding counsel could just come and say, I'm not really sure what I said, and that Christian's testimony as to what he said weren't sufficient, then there would never be an ineffective assistance of counsel claim based on what a counsel told his client. There never would be. There would be no reason for counsel not to just say, I don't remember. Isn't it clear in terms of prejudice that the reason that he pled guilty ultimately was the government gave him something that he didn't need from them. And that was they took mandatory life off the table. That's what he thought they gave. That's why I was in the big capital letter. It is basically what they said. Okay, if you plead guilty that will be off the table. Your Honor is exactly right. The heart of these negotiations is the fear of facing a life sentence. Exactly. He didn't need what counsel ineffectively made him believe he needed that which they gave him and that's what lured him into the plea. There are many reasons why a person might not want to go to prison. I think that at least 100, that would be just a start. But that's not a point of prejudice. Go ahead. The other concern, Your Honor, is that the relief requested here is it's narrow. Mr. Christian wants a chance to be reset to where he was the morning of trial, to go to trial, or if the government wants to discuss another plea, that's fine. But he wants to be right back at that moment when counsel gave him the wrong advice and told him he faced mandatory life imprisonment when, in fact, he did not. Thank you, Mr. Leiberg. I note your court appointed. We appreciate very much your undertaking representation. You've done a good job for us. It's my pleasure. Thank you, Your Honor. All right. I'll ask the clerk to adjourn court and then we'll come down and greet counsel. This honorable court stands adjourned until tomorrow morning at 930. God save the United States and this honorable court.
judges: William B. Traxler, Jr., Roger L. Gregory, G. Steven Agee